IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRAIG THOMAS DAWSON,                                    3:06-cv-00012-KI

            Petitioner,                        OPINION AND ORDER

    v.

BRIAN BELLEQUE,

            Respondent.


Ryan Scott
1549 SE Ladd Avenue
Portland, Oregon 97214

    Attorney for Petitioner

John R. Kroger
Attorney General
Carolyn Alexander
Senior Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent

KING, Judge

    Petitioner brings this habeas corpus proceeding pursuant to 28

U.S.C. § 2254, alleging that his current confinement violates the

1 -- OPINION AND ORDER

*Ex Post Facto* Clause of the U.S. Constitution.  For the reasons set forth below, petitioner's second amended petition (#53) is denied, and this proceeding is dismissed, with prejudice.

### BACKGROUND

The factual history in this case is lengthy.  Because neither party provided a complete and accurate factual background, I have reviewed the exhibits submitted by the parties to piece together an accurate history as set forth below.

• **Petitioner's Original Commitment**

On May 30, 1985, petitioner killed Jerry Edwin Abeene, by shooting him in the stomach.  Resp. Exhs. 101 & 102.  On October 9, 1985, following a stipulated facts trial, petitioner was convicted of murder and sentenced to a term of life imprisonment.  Resp. Exh. 101.

On February 12, 1986, the Oregon Board of Parole and Post-Prison Supervision ("Board") held a prison term hearing at which time the Board set petitioner's prison term at 120 months (based upon a criminal history/risk score of 11, a crime category 7, and a matrix range of 96 to 120 months incarceration), and a parole release date of May 30, 1995.  Resp. Supp. Exh. 113 (originally from case 6:00-cv-1396-TC) at 40.  On the relevant Board Action Form ("BAF"), petitioner's good time date is listed as "LIFE", and petitioner's prison term expiration date is listed as "LIFE".  Id.

On October 20, 1988, the Board held a personal review hearing, and advanced petitioner's parole date by seven months to October 30, 1994. Id. at 42. On the BAF, petitioner's projected good time date is listed as August 3, 1996, and petitioner's projected prison term expiration date is April 4, 2003. Id. at 41. On November 29, 1991, the Board held a second personal review hearing, and advanced petitioner's parole release date by an additional five months to May 30, 1994. See Id. at 113-14 (BAF #4) & 117 (Administrative Review Response #2).[1] Petitioner's good time and prison term expiration dates are left blank on this form.

On November 17, 1992, the Board issued Administrative Review Response (ARR) #3, withdrawing the prior two BAFs, "based on the inmate's request to be considered under [the] 'Williams' [decision]."[2] However, the Board proceeded to grant the same 12-month reduction, again setting petitioner's parole release date on May 30, 1994. Resp. Supp. Exh. 113 at 49.

---

[1] Attending the November, 1991 hearing, pursuant to Ballot Measure 10, were the victim's wife, sister, and friend. Petitioner appealed the Board's 1991 decision, contending that the Board applied O.R.S. 144.120(7), enacted in 1986 as part of Ballot Measure 10 (Or.Laws 1987, ch. 2, § 14), to allow the victims' representatives to attend and testify at the hearing. The Oregon Court of Appeals rejected petitioner's challenge, holding that "the impact of Ballot Measure 10, as applied in this case, merely expands the flexibility of post-conviction processes available to the state." Dawson v. Bd. of Parole and Post-Prison Supervision, 123 Or. App. 619, 622, 860 P.2d 878 (1993).

[2] See Williams v. Bd. of Parole, 107 Or. App. 515, 812 P.2d 443 (1991).

On September 8, 1993, the Board held another personal review hearing, advancing petitioner's parole release date by five months to December 30, 1993, and setting a *minimum* 36-month period of parole supervision. The Board's holding is memorialized in BAF #5:

> A POSITIVE RECOMMENDATION FROM THE INSTITUTION FOR A REDUCTION FOR THE PERIOD UNDER REVIEW PURSUANT TO OAR 255-40-025(1) HAS BEEN RECEIVED . . . . ESTABLISHING A RELEASE DATE OF 12/30/1993 FOLLOWING 103 MONTHS.
>
> * * * * *
>
> MINIMUM PERIOD OF PAROLE SUPERVISION IS TO BE 36 MONTHS. DISCHARGE OF PAROLE PRIOR TO SENTENCE EXPIRATION DATE DEPENDS UPON APPROVAL BY THE BOARD OF PAROLE FOLLOWING A FAVORABLE RECOMMENDATION FROM THE PAROLE OFFICER.

Resp. Exh. 103 at 2. On BAF #5, petitioner's projected good time date is listed as April 11, 1996, and his sentence expiration date is December 10, 1997. Id. at 1.

On November 16, 1993, the Board issued BAF #6, modifying petitioner's conditions of parole to prohibit him from entering Lane County. BAF #6 specifies that petitioner's 36-month term of parole supervision is set pursuant to 1993 law, i.e., Senate Bill 139 and O.A.R. 255-93-000:

> ***THE MINIMUM PERIOD OF SUPERVISION PURSUANT TO OAR 255-93-000 (SB 139)*** SHALL BE: * * * MINIMUM 36 MONTHS SUPERVISION FOR . . . MURDER . . . UPON COMPLETION OF THE MINIMUM PERIOD OF SUPERVISION, THE SUPERVISING OFFICER MAY SUBMIT A FAVORABLE RECOMMENDATION THAT YOU BE ALLOWED TO GO ON UNSUPERVISED STATUS. THE BOARD WILL MAKE THE FINAL DECISION. IF ALLOWED TO GO ON UNSUPERVISED STATUS, YOU WILL REMAIN ON SUCH STATUS UNTIL THE EXPIRATION OF YOUR SENTENCE UNLESS YOU ARE RE-ACTIVATED DUE TO NEW CRIMINAL ACTIVITY OR SOME OTHER REASON WARRANTING RE-ACTIVATION OF SUPERVISION.

Resp. Supp. Exh. 113 at 65 (emphasis added); see O.A.R. 255-93-000
(providing that a minimum 3-year period of supervised parole shall
be imposed for offenders sentenced for murder) (temp. eff. date
8/18/93 & perm. eff. date 10/15/93). On BAF #6, petitioner's good
time date is extended to July 27, 2003, and his prison term
expiration date is November 25, 2010. Id. at 64.

Petitioner sought administrative review of BAF #6. On
December 1, 1993, the Board issued ARR #4, rejecting petitioner's
appeal under 1993 law:

> TECHNICALLY, A LIFE SENTENCE MEANS POTENTIAL SUPERVISION
> FOR LIFE. PREVIOUSLY, STATED PERIODS OF SUPERVISION, IN
> YOUR CASE ONE YEAR, HAVE ONLY BEEN MINIMUM PERIODS.
>
> *AS OF AUGUST 1993, SB139 AUTHORIZES A MINIMUM PERIOD OF
> THREE YEARS SUPERVISION FOR PERSONS CONVICTED OF MURDER.*
> WHEN YOU SUCCESSFULLY COMPLETE A THREE YEAR PERIOD, YOUR
> PAROLE OFFICER MAY RECOMMEND TO THE BOARD THAT YOUR
> PAROLE BE DISCHARGED.

Resp. Supp. Exh. 113 at 66 (emphasis added). Petitioner did not
seek judicial review of that decision.

### • Petitioner's Release on Parole

On December 30, 1993, petitioner was released on parole. Id.
at 60. The Order of Parole provides for 36 months supervision,
with an expiration date of December 28, 1996, and a sentence
expiration date of November 24, 2499. Id. The Order of Parole
further provides that "[d]ischarge of parole prior to the sentence
expiration date is contingent upon approval by the Board of Parole
and payment in full of any money owing, pursuant to OAR 255-90 &

5 -- OPINION AND ORDER

255-92". Id. Petitioner's parole supervision was extended, effective March 28, 1996, in an order which provides as follows:

> UPON REVIEW OF THE REQUEST FOR DISCHARGE AND THE PAROLEE'S FILE, THE BOARD HAS CHOSEN NOT TO APPROVE DISCHARGE. PLEASE HAVE THE PAROLEE SIGN A WAIVER ALLOWING THE BOARD TO EXTEND THE TENTATIVE DISCHARGE DATE, OR INITIATE A HEARING AT WHICH THE PAROLE MUST SHOW CAUSE WHY THE TENTATIVE PAROLE DISCHARGE DATE SHOULD NOT BE EXTENDED.

> Dawson has a life long history of mental and emotional problems. Although he has made progress, the Board feels continued supervision is in Dawson's and the communities [sic] best interest.

Id. at 58-59. Petitioner's sentence expiration date on that form is listed as January 1, 2499. Id.

   • **Revocation of Parole**

On or about April 19, 1996, petitioner was arrested after his wife contacted his parole officer complaining that petitioner was increasingly threatening, and had weapons in his possession. Id. at 54-56. Petitioner subsequently was charged with being a felon in possession of a weapon. Id.[3] On May 6, 1996, a hearings officer recommended that petitioner's parole be revoked. Id. at 52-54.

On May 7, 1996, petitioner's parole was revoked after serving approximately 28 months on parole. Id. at 63; Second Amended

---

[3] Petitioner was convicted of Felon in Possession of a Firearm in Case No. C960887CR, and sentenced to 24 months imprisonment, with two years post-prison supervision. See Resp. Exh. 107 at 4.

Petition at ¶ 4.  Following a psychological examination and future disposition hearing, the Board denied petitioner's re-release on parole, finding that he could not be adequately controlled in the community.  Resp. Supp. Exh. 113 at 196-230, 272-76, & 281.  The Board's ruling is memorialized in BAF #13:

> PURSUANT TO OAR 255-75-079; OAR 255-75-096 AND CITING
> EXHIBIT H, AGGRAVATING FACTOR(S): REPETITION OF TYPE OF
> CONDUCT ASSOCIATED WITH COMMITMENT OFFENSE OR PAST
> CONDITIONS (RETURN TO ASSAULTIVENESS, INVOLVING IN SAME
> TYPE OF CRIMINAL ACTIVITY); REPEATED POSSESSION OF
> MULTIPLE WEAPONS.  THE BOARD DENIES RE-RELEASE, FINDING
> THE INMATE CAN NOT BE ADEQUATELY CONTROLLED IN THE
> COMMUNITY.  THE DENIAL OF RE-RELEASE RESULTS IN A TRUE
> LIFE SENTENCE.

Id. at 281 & Resp. Exh. 104 at 2.  Petitioner sought administrative review, which was denied by the Board in ARR #5 on February 10, 1997.  Resp. Exh. 105.

In 1998 and 1999, petitioner sought state habeas corpus relief challenging the Board's imposition of a true life sentence.  Resp. Exhs. 106 & 123.  The state courts denied habeas relief in both proceedings.  Resp. Exh. 113 & 131 (Marion County Case Nos. 98C-19952 & 00C-13113).  Petitioner appealed from both habeas proceedings, but those appeals subsequently were dismissed without a decision on the merits.  Resp. Exhs 122 & 133 (CA A104917 & CA A111010).

• **Federal Habeas Corpus Proceedings**

In October, 2000, petitioner sought federal habeas corpus relief.  Dawson v. Schiedler, 6:00-cv-1396-TC.  On October 21,

2002, Magistrate Judge Thomas Coffin denied habeas relief on the basis that petitioner procedurally defaulted his available state remedies. The Honorable Michael R. Hogan adopted the Findings and Recommendation, and the Ninth Circuit subsequently denied a certificate of appealability.

On or about January 3, 2006, petitioner filed the instant proceeding. On October 17, 2007, I dismissed petitioner's amended petition on the basis that it was successive. Petitioner appealed and, on June 22, 2011, the Ninth Circuit issued an order providing as follows:

> We construe this appeal as a motion under 28 U.S.C. § 2244(3) to file a second or successive petition for habeas corpus. As jointly requested by the parties, we grant the motion. We direct the district court to allow Petitioner Craig Dawson to file his Second Amended Petition for Writ of Habeas Corpus. As jointly agreed by the parties, the district court shall consider the merits of Petitioner's Ex Post Facto claim. As jointly agreed by the parties, Superintendent Belleque shall waive all of his procedural defenses in the district court.

## DISCUSSION

The *Ex Post Facto* Clause of the U.S. Constitution bars "enactments, which by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249-50 (2000); Cal. Dep't. of Corr. v. Morales, 514 U.S. 499, 508-509 (1995). It is well settled that retroactive changes in laws governing the parole of prisoners, in some instances, may violate the *Ex Post Facto* Clause. Garner, 529 U.S.

at 250; Morales, 514 U.S. at 508-09; Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003); Nulph v. Faatz, 27 F.3d 451, 455 (9th Cir. 1994).

The Supreme Court has recognized, however, the inherent difficulty in determining whether retroactive application of a particular change in parole violates the *Ex Post Facto* Clause given the discretionary nature of parole board decisions. Garner, 529 U.S. at 250. The Court has cautioned that "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited" and there is no "single formula for identifying which legislative adjustments, in matters bearing on parole, would survive an *ex post facto* challenge." Garner, 529 U.S. at 250 & 252; Morales, 514 U.S. at 508-09; Brown v. Palmateer, 379 F.3d 1089, 1093 (9th Cir. 2004). The question is a matter of degree, and the controlling inquiry is whether retroactive application of the change in the law creates a "sufficient risk of increasing the measure of punishment" attached to the petitioner's crime. Garner, 529 U.S. at 250; Morales, 514 U.S. at 509; Gilman v. Schwarzenegger, 638 F.3d 1101, 1106 (9th Cir. 2011).

In his second amended petition, petitioner raises the following two *ex post facto* grounds for relief:

    A.    Placing petitioner on parole for 36 months in 1993 violated the Ex Post Facto Clause of the United States Constitution, because the law in

effect in 1985--at the time petitioner committed the underlying murder--authorized a period of parole of only 12 months under the circumstances of this case; and

B.   Sentencing petitioner to "true life" in prison after revoking his parole in 1996 also violated the Ex Post Facto Clause of the United States Constitution, because the law in effect in 1985 authorized incarcerating petitioner only until his "statutory good time date," which the Board previously had determined was April 11, 1996.

## I.   Ground One:  Imposition of 36-Month Term of Parole.

In his first ground for relief, petitioner contends that application of post-1985 law violates the *Ex Post Facto* Clause because the law in effect on May 30, 1985, authorized a period of parole of only 12 months under the circumstances of this case. Second Amended Petition at 2.  I disagree.

### A.   Applicable State Law.

As of May 30, 1985, the date of petitioner's original offense, O.R.S. 144.310 provided in relevant part:

(1) When a parole prisoner has performed the obligations of parole *for such time as satisfies the State Board of Parole that the prisoner's final release is not incompatible with the prisoner's welfare and that of society, the board may make a final order of discharge and issue to the paroled prisoner a certificate of discharge*; but no such order of discharge shall be made within a period of less than six months after the date of release on parole, except that when the period of the sentence imposed by the court expires at an earlier date, a final order of discharge shall be made and a certificate of discharge issued to the paroled prisoner not later than the date of expiration of the sentence.

(2) *A paroled prisoner shall be subject to active parole supervision during the first six months of the period of parole. The board may require a more extended period of active supervision if, in a manner provided by rule, it finds that a six-month period of supervision is incompatible with the welfare of the parolee or of society.* * * *

(3) The board may extend or renew the period of active parole supervision or delay discharge of a parolee if it finds, in the manner provided in ORS 144.343, that the parolee has violated the conditions or terms of parole.

*Former* O.R.S. 144.310 (1981) (emphasis added), *amended* Or.Laws 1987, c. 320, § 61, *repealed* Or.Laws 1993, c.680, § 7.

The corresponding administrative rule, *former* O.A.R. 255-90-002(1) (eff. May 15, 1982), provided:

Pursuant to ORS 144.310 the Board shall establish a discharge date from active supervised parole. *The period of supervised parole shall be as shown in the guideline matrix, Exhibit H-1, unless the Board provides written reasons for an extended supervision period. Extended supervision periods shall not exceed thirty-six (36) months.*

*Repealed* (October 15, 1993) (emphasis added). Pursuant to Exhibit H-1 (referenced in the rule), petitioner's *presumptive* term of active supervised parole was one year.[4]

On November 4, 1986, the citizens of Oregon enacted Ballot Measure 10, a comprehensive victims' rights initiative, which was

_____

[4] Petitioner incorrectly references Exhibit I in his briefing, which is the chart used to calculate the initial term of parole supervision under O.A.R. 255-90-002, effective May 31, 1985, one day after petitioner's offense. See Pet.'s Memo. at 4.

codified in relevant part at O.R.S. 144.305. Or Laws 1987, ch. 2; Davidson v. Bd. of Parole and Post-Prison Supervision, 139 Or. App. 289, 293, 911 P.2d 973, adhered to as modified, 140 Or. App. 72, 914 P.2d 14 (1996). "That law applied to all crimes committed on or after December 12, 1986 and . . . required parole to extend for the entire term of an offender's sentence." Id. The Board, in turn, adopted parole supervision rules contained in OAR Chapter 255, division 92 *(applicable to prisoners who committed crimes on or after December 4, 1986)*, recognizing that parole shall extend the entire term of a prisoner's sentence, but authorizing the Board to discontinue "active supervision on parole" after three years. See O.A.R. 255-92-005, 255-92-010(4), 255-92-015, & 255-92-020 (1987), *repealed* (October 15, 1993).[5]

In 1993, the state legislature enacted Senate Bill 139, codified at O.R.S. 144.085, providing that the Board shall adopt rules providing for periods of supervised parole requiring, *inter alia*, that prisoners sentenced for murder serve at least three years supervised parole. O.R.S. 144.085(1)(b) (1993); *former*

---

[5] The only relevance of Ballot Measure 10 to the resolution of this case is that petitioner incorrectly states in his memorandum, that his 36-month term of parole supervision was set pursuant to Ballot Measure 10. See Pet.'s Memo. at 3-4 & 9-11. As set forth *supra*, the Board expressly set petitioner's parole supervision term pursuant to 1993 law. Petitioner's error in referencing Ballot Measure 10 is compounded by respondent's failure to acknowledge the existence of BAF #6 and ARR #4 in its legal analysis.

O.A.R. 255-93-000(2)(b) (1993), *repealed* (May 18, 1999); see
Fernandez v. Board of Parole and Post-Prison Supervision, 137 Or.
App. 247, 249, 904 P.2d 1071 (1995). Upon completion of the period
of supervision, the Board may (a) order a period of inactive parole
that shall continue until the expiration of the sentence; or (b)
extend the supervision period. O.R.S. 144.085(3)(1993); *former*
O.A.R. 255-93-010 (1993), *repealed* (May 18, 1999).

**B.   Analysis.**

Under the law in effect on May 30, 1985, petitioner's
presumptive parole term was one year, although the Board had
unfettered discretion to impose a three-year term for written
reasons. *Former* O.R.S. 144.310(2) (1981), *amended* Or.Laws 1987, c.
320, § 61, *repealed* Or.Laws 1993, c.680, § 7; O.A.R. 255-90-002(1)
(eff. May 15, 1982). At the end of the initial term of parole, the
Board had discretion to determine whether to discharge petitioner
from parole or continue supervision. Haskins v. Palmateer, 186 Or.
App. 159, 165, 63 P.3d 31 (2003).

Under the 1993 law expressly applied to petitioner in BAF #6
and ARR #4, petitioner's presumptive term of parole was three years
(with no written reasons). At the end of the three year period,
the Board retained its discretion to determine whether to extend
petitioner's parole, or discharge him from parole. See O.R.S.
144.085(3) (1993); *former* O.A.R. 255-93-010 (1993), *repealed* (May
18, 1999).

13 -- OPINION AND ORDER

The parties have not cited any well-established Federal law holding that a change in law which increases the *length of a parole term*, as opposed to laws affecting parole eligibility or release dates, constitute punishment for *ex post facto* purposes. Assuming that the constitutional prohibition applies, the difficulty of applying the *Ex Post Facto* Clause in this context is that the parole board had broad discretion under *former* O.R.S. 144.310 (1981), to extend petitioner's term of parole for the entire length of his court-imposed sentence. Haskins, 186 Or. App. at 165.[6] Further, the Board had the discretion under the regulations in effect on both May 30, 1985, *and* in 1993, to impose an initial term of parole of three years, albeit written reasons were required in 1985, and it was the minimum term of parole by 1993.

While the Supreme Court has held in the *sentencing* context, that a change to a mandatory maximum sentence, or the enactment of a presumptive sentencing range may violate the *Ex Post Facto* Clause,[7] the parole context differs due to the discretionary nature of when to discharge a parolee from supervision. The change from an *initial* parole term of one year (with a discretionary option of three years) to a mandatory minimum parole term of three years,

---

[6] In engaging in *Ex Post Facto* analysis, this court accepts the meaning ascribed to state statutes and regulations by the state courts. Himes, 336 F.3d at 853; Brown, 379 F.3d at 1093.

[7] See Lindsey v. Washington, 301 U.S. 397, 400-01 (1937); Miller v. Florida, 482 U.S. 423, 432-35 (1987).

creates only a speculative and attenuated risk of increasing the
punishment for petitioner's crime given the Board's broad
discretion to require petitioner to serve his entire court-imposed
sentence on parole.

Hence, based upon an independent review of the record, I
conclude that the state court's rejection of petitioner's *ex post
facto* challenge to the Board's application of the 1993 laws and
regulations in setting his initial term of parole is neither
contrary to, nor an unreasonable application of clearly established
Federal law.  See 28 U.S.C. § 2254(d)(1).[8]  If it is assumed that
deference is not appropriate given the procedural posture of this
case, I reach the same conclusion on *de novo* review.

In so holding, I decline to defer to the state court's
reasoning in Thierman v. Bd. of Parole and Post-Prison Supervision,
134 Or. App. 304, 894 P.2d 1250 (1995) (summarily concluding that
retroactive application of O.R.S. 144.085(1)(b) violates the state
*ex post facto* clause as to offender convicted in 1985).  See also
Byrnes v. Bd. of Parole, 134 Or. App. 296, 894 P.2d 1252 (1995)
(concluding that retroactive application of O.R.S. 144.085(1)(b)

---

[8] It is worthy of note that an "as applied" challenge to
application of the 1993 law similarly would fail given the fact
that the Board extended petitioner's parole after a three year
period on the basis of his "life long history of mental and
emotional problems".  See Resp. Supp. Exh. 113 at 58-59; Himes,
336 F.3d at 855 n.5; Nulph, 27 F.3d at 456.

15 -- OPINION AND ORDER

does not violate *ex post facto* clause as to offender convicted in 1981).

In both Thierman and Byrnes, the state court held that the question of whether the retroactive application of the law constituted an *ex post facto* violation turned on whether the law "disadvantaged" the parolee, or was applied to his "detriment." Thierman, 134 Or. App. at 306 (citing Byrnes); Byrnes, 134 Or. App. at 300 (citing United States v. Paskow, 11 F.3d 873, 882 (9th Cir. 1988)). However, just days before the Thierman and Byrnes decisions, the U.S. Supreme Court in Morales cautioned against using such an ambiguous standard for federal *ex post facto* purposes:

> Our opinions in *Lindsey, Weaver,* and *Miller* suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the "disadvantage" of covered offenders. But that language was unnecessary to the results in those cases and is inconsistent with the framework developed in *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990). After *Collins*, the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's "*opportunity* to take advantage of provisions for early release," but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

Morales, 514 U.S. at 506 n.3; see also Garner, 529 U.S. at 255. Given the state courts failure to cite or apply the test in

Morales, I do not find the state court's *ex post facto* analysis persuasive.

## II.   **Ground Two: Imposition of True Life Sentence**.

Petitioner's second *ex post facto* claim is premised upon the contention that his "good time" date expired by the time he committed the conduct underlying his felon in possession conviction in 1996.   Petitioner reasons that the Board therefore had no authority to revoke his parole, and in so doing necessarily relied upon a retroactive application of O.A.R. 255-75-096 (amended after petitioner's criminal conduct to specify that the Board may require a parolee convicted of murder to serve the remainder of his sentence when his parole is revoked).   Pet.'s Memo. at 11-12.

### A.   **Applicable State Law**.

On May 30, 1985, O.R.S. 144.343 (1981) set forth the procedure for the revocation of parole as follows:

> (1) When the State Board of Parole . . . has been informed and has reasonable grounds to believe that a person under its jurisdiction has violated a condition of parole and that revocation of parole may be warranted, the board . . . shall conduct a hearing . . . to determine whether there is probable cause to believe a violation of one or more of the conditions of parole has occurred and also conduct a parole violation hearing if necessary. * * *
>
> (2) The board may:
>
> (a) Reinstate or continue the alleged violator on parole subject to the same or modified conditions of parole; or

> **(b)** **Revoke parole and require that the parole violator serve the remaining balance of the sentence as provided by law.**

(Emphasis added).

The related administrative rule, O.A.R. 255-75-096 (eff. Feb. 28, 1985), however, made specific reference to the parolee's good time date:

Denial of Reparole Consideration

(1) The Board may deny reparole consideration and require the parole violator **to serve to the statutory good time date.** This action requires the affirmative vote of at least four voting members.

(Emphasis added). O.A.R. 255-75-096 was amended in 1989, to add language recognizing that a parolee convicted of *aggravated* murder could be returned to prison for life. O.A.R. 255-75-096(1) (perm. eff. Oct. 16, 1989). In 1997, the rule was amended again to add language recognizing that a parolee convicted of murder could be returned to prison for life. O.A.R. 255-75-096(1) (perm. eff. Mar. 14, 1997).

## B.    Analysis.

The language in the 1985 version of O.A.R. 255-75-096, allowing the Board to require a parolee to return to prison to serve *to his statutory good time date*, and the fact that the rule was not amended until 1997, to expressly provide that a parolee convicted of murder may be returned to prison for life, offers some

support for petitioner's *ex post facto* argument *in isolation*. However, I also consider the language of the applicable statutes.

As set forth above, on the date petitioner committed his original offense, O.R.S. 144.343 (1981) provided that, upon a finding that a parolee violated his parole, the Board may "[r]evoke parole and require that the parole violator serve the remaining balance of the sentence as provided by law. See also *former* O.R.S. 144.390 (1975) (prisoner recommitted for violation of parole shall serve out the sentence), *repealed* Or.Laws 1989, c. 790, § 47a; State ex rel Gonzalez v. Washington, 182 Or. App. 112, 119, 47 P.3d 537 (2002). Consequently, under state law in effect on May 30, 1985, the Board had the authority to revoke petitioner's parole, and require him to serve the remaining balance of his life sentence.

Further, pursuant to O.R.S. 421.120(2) (1981), a prisoner sentenced to life was not entitled to good time credits. Hence, contrary to petitioner's argument, and regardless of the various projected good time dates listed on petitioner's board action forms, at the time of his release on parole in 1993, his sentence had not expired. In this regard, it is worthy of note that contrary to petitioner's argument, the last BAF issued by the Board before his release on parole listed his good time date as July 27, 2003, not April 11, 1996. Compare BAF #5 (Resp. Exh. 103) and BAF #6 (Resp. Supp. Exh. 113 at 64).

19 -- OPINION AND ORDER

In sum, the Board's action in revoking petitioner's parole, requiring him to serve his life sentence, and not providing good time credit against his sentence, complied with state law as it existed on the date of his offense.  The applicable language in O.A.R. 255-75-096(1) (eff. Feb. 28, 1985), providing that the Board may deny reparole consideration and require the parole violator to serve to his *statutory good time date,* does not warrant a conclusion that petitioner was subjected to an *ex post facto* law. Cf. Dobbert v. Florida, 432 U.S. 282, 294 (1977) (statutory procedures must be compared *in toto* to determine if the new law is more onerous); Nulph, 27 F.3d at 455-56 (same). Accordingly, based upon my independent review of the record, petitioner has failed to demonstrate that the state courts' rejection of this *ex post facto* claim is contrary to, or an unreasonable application of clearly established Federal law.  See 28 U.S.C. § 2254(d)(1).  To the extent that *de novo* review is warranted, my ruling would be the same.

## CONCLUSION

For the reasons set forth above, petitioner's second amended petition (#53), and motion for summary judgment (#70) are DENIED. This proceeding is DISMISSED, with prejudice.

///

///

A certificate of appealability is GRANTED as to both grounds
for relief.  See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 25 day of June, 2012.

Garr M. King
United States District Judge